Hear ye, hear ye, hear ye. This Honorable Appellate Court of the 2nd District is back in session. Pursuant to adjournment, Honorable Michael J. Burke is out. Is this the seat? Your Honor, this is the second case in front of Court 212-1193. Chicago Title Land Trust Company v. Algus Real Estate, LLC. On behalf of the Apple Office, Peter Thomas Smith. On behalf of Chicago Title Land Trust, on behalf of the Strong's, Mr. Timothy Elliott. And also in attendance today on the non-argued case is Mr. John Damish, representative of the Rakes. Thank you, Mr. Smith. You may proceed. May it please the Court. Mr. Justice Burke, Justices Jorgensen and Hutchinson. My name is Peter Smith. I'm from Smith and Meyer in Sycamore, Illinois, and I represent Algus Real Estate in this. Algus in the case below is the defendant and counter plaintiff. Timothy Elliott represents Chicago Title Land Trust, number 588, and also Warren Strong, Lucas Strong, and Samuel Strong, who are the holders of the beneficial interest of that land trust. Patrick Connelly represents King County, he's not appearing. James Stoddard represents John Strong, another holder of the beneficial interest of the land trust, but he is also not appearing. And John Damish is here on behalf of the defendants, John Brummel and John DeRate, a farmer and a tile installer. This case is one that's based on the Illinois Drainage Law. The Strongs alleged in their complaint against Algus and DeRate that damage was caused to the drainage ponds on their property. In the counterclaim, Algus alleged that Strongs violated the Illinois Drainage Act, trespassed on its property, and then requested money damages and injunctive relief. The Strongs, of course, filed a motion to dismiss with regard to that counterclaim based on federal preemption. Claiming that administrative actions by the US Army Corps of Engineers determined all the issues. And after briefing and oral argument, the trial judge granted the plaintiff's motion. The broadly stated issue here is whether the trial judge erred in granting the motion to dismiss that was made pursuant to 735 ILCS 5-2-6199. On the basis of the Federal Clean Water Act, preempting the Illinois Drainage Act and the Illinois Common Law of Drainage and Trespass. And this in turn was based on administrative actions by the Army Corps of Engineers. That there had been unlawful fill placed in a navigable water of the US, allegedly under its jurisdiction. Do you agree that the only possible preemption here would be conflict preemption? I do, Your Honor, I do. And more specifically, whether the party was physically unable to comply with both federal and state law. I don't draw it that narrowly, Your Honor. Because in actuality, August has fully complied with the requirements within the order of the Army Corps of Engineers. Yet, however, still has its cause of action with regard to trespass and violation of the drainage law. I think we're talking about the Stroms complying with the agreed order with the Army Corps versus the Illinois Drainage Law. And that's what the argument appears to boil down to. Well, Your Honor, whether the Stroms have complied with the order that was made ex post facto two years after the fact or not. The basic facts remain that back in 2009, there was a backup of water that had been caused by the Stroms onto the Alden's property. That destroyed over an acre of that land for farming purposes. And also that the farmer who was leasing and operating the property had lost crops from that area. There's also the damage that was done to the drainage system that's on the Alden's property. And in 2009, when the Army Corps of Engineers issued its first order, it found that the Stroms were in violation of that. And it was basically for what I've described to you factually. So we have a situation where there is a trespass, there is damage done, and this occurs from a period of about 2005 to 2009. When it's found and when Mr. Brummel comes on the property in order to repair the drain tile, and he finds that that drain tile is silted in with water and dirt that has backed up into the system instead of allowing free flow. Due to the pond expansion? Yes. And because of that, that cause of action at that period of time, whether they've complied later with the Army Corps of Engineers order concerning remediation, providing additional drainage remediation for what they've done with the improper construction of these two ponds. That does not remove the Drainage Act cause of action or the common law cause of action with regard to August or with regard to Durate. When August first started to, when this water first encroached, and August, I guess, hired Gustafson to go in and start doing the work. Did they get permits from anybody to do this work? No, they went to Kane County, and Kane County basically either provided whatever permit was needed or said you don't really need it. And the reason it's typically not required is because in this situation, this is a drainage system that had been in place since the early 1900s. And the drainage system that's on the August property drains other strong property to the north, and then empties into strong property to the south. And that drainage system has been servicing that area for 40, 50, 60 years. But the ponds that are causing the problems are on the southern strong property, correct? Correct, and at one time, if my recollection is correct, there was a single pond, and it was relatively limited in size. And this area is actually the headwaters of Virgil Ditch Number Two, from a technical standpoint. And it's at this point that there actually begins to be a ditch that forms and begins to drain. So there was a small pond there initially, and it's my recollection that that small pond was expanded and a second pond was brought in, all of that without permit from the Strongs. All of that without permit from the Army Corps of Engineers. And in addition, in violation of a conservation deed that they had with Kane County, because they never went to Kane County and got any permission for any of that. Why would they need permission from the Army Corps of Engineers? Because of clean water or because this ditch is a navigable waterway? I suppose to some extent that goes to the creativity of the federal government to regulate. There's actually a Supreme Court case, US Supreme Court case, that says where there is just intermittent flow, you're not supposed to regulate. But the Army Corps says, well, if it comes to the navigable waters, and if it is part of and affects the navigable waters, even a ditch like Virgil Ditch Number Two, then we get to regulate it. And where there are wetlands, we get to regulate that too, if it's not a pothole, but part of the flowage. And so what the Army Corps of Engineers found was, they used the same language in both of their orders. Fill and or dredged material has been discharged into a tributary, not even the ditch itself, a tributary of Virgil Ditch Number Two. And that's the same language for both the December 10, 2009 order against the Strahms and also against my client, August. There were two cases that we decided with regard to this conflict situation. One of them was the Metropolitan Sanitary District of Greater Chicago versus U.S. Steel. It's a 1975 case from the first district. And I take the time to recite it here because the arguments that were made with regard to preemption by U.S. Steel in that case, were that there was a need for consistency and uniformity in determination of factual questions, and that that was indispensable and could only be accomplished by deferring to the administrative body. In this case, however, the court went on to deny the U.S. Steel motion, and stated that their position was based on the faulty and erroneous premise that Illinois courts and the federal administrative agencies are dealing with the identical problem. And that's to some extent the essence of what we have here. Is there a difference between the primary jurisdiction analysis in U.S. Steel and the preemption analysis in this case? Yes, there is. And the basic reason is because they're not really directly dealing with a conflict situation. But the telling thing is that they deal with it by implication because of the argument I just described. U.S. Steel saying consistency and uniformity, we don't want to have any conflicts. And what the court really says is, we've got two governmental bodies addressing two different problems. One is dealing with clean water, and the other is dealing, in our case, with trespass, drainage, interference with that drainage. And then they, what do you do when you have a continuing trespass? Continuing is the wrong word. When you have a recurring trespass of the type that you have here. And so it's not quite the same, but it deals basically with that issue. One of the other things, one of the other cases that I cited to the court was International Paper v. Ouellette. And that's the Supreme Court case. And this case is interesting because it involves a situation where there is an action in nuisance brought against International Paper, and International Paper seeks to have it dismissed because the Army Corps of Engineers has acted and has dealt with this. And it's actually in a footnote because what we're dealing here with is remedy and not cause of action. The International Paper case is analogous, but again, not directly in point. And what is really said here is, first, the Supreme Court stated the Savings Clause specifically preserves other state actions. Nothing in the Clean Water Act bars agreed individuals from bringing a nuisance claim pursuant to the law of the source state. And the Clean Water Act allows states to impose higher standards on their own point sources, including the right to impose higher common law as well as higher statutory restrictions. In your opinion, is our case more like U.S. Steel or more like Ouellette? Where in U.S. Steel you have two government bodies talking about different issues, and Ouellette it seems to be two government courts talking about the same issue but applying different standards and saying that the state can have stricter standards on the same issue. Ouellette is much closer. You think so? Yes. And in reading it, I never thought that I would be citing a footnote. But apparently a similar argument to the one that's being made here was also made in the international paper versus Ouellette, and that is that the remedy was going to conflict. And the Supreme Court didn't address it in the body, but they specifically noted that it did not draw a line between the types of relief sought because there is no suggestion of such a distinction in either the Clean Water Act or the legislative history. And so suits may seek compensatory damages, injunctive relief, and punitive damages without the preemption of one remedy over the other. And what we really have here is a case in which the conflict that's being claimed is a conflict of remedy and not with regard to the cause of action. So you're saying that even if, although you don't acknowledge that, even if something of your request was preempted, you would still have other actions valid in state court? That's correct. And which action would be valid in state court of the ones you've requested? Well, the causes of action would all be valid. The question is the relief that's requested. I don't see how a damages request is in conflict with, for instance, but perhaps in the injunctive relief where we're asking that ponds either be removed or dealt with in some way. That could, but that's actually at this point speculation as to what the trial court might actually do. There is one other fact in all of this that I think has special import. Within both of the Army Corps of Engineer orders, they both contain this language, quote, this settlement agreement in no way affects or relieves the Strauss or August of responsibility to comply with any federal, state, or local law or regulation. And that I think is, although it's simply in the order, is actually a fair statement of the law as well in this area. No. No. All right, Counselor, your time is up and you will have time for rebuttal argument. Thank you very much, Your Honor. You're welcome. Mr. Elliott, you may proceed. So are we ready to get the canoe for the Virgil Creek? Perhaps. Good morning, Your Honors. May it please the Court, Tim Elliott on behalf of the Counter Defendants Chicago Title and the Strom family. Mr. Elliott, before you start, let me ask you a quick question. In the trial court, you filed a motion for the trial court to find that the Illinois Drainage Code was preempted by the Federal Clean Water Act in this case. That's correct, but I think what we were arguing was conflict preemption. We're not saying the Illinois Drainage Code goes by the wayside or needs to be invalidated in its entirety. What we were saying was in this specific circumstance with respect to this specific piece of property, these causes of action must give way to the orders entered by the Army Corps of Engineers. Does that require notice to the AG under Supreme Court Rule 19? No, we do not believe it does because we are not arguing that the statute itself is unconstitutional. We are simply saying that he does not have a private cause of action under this specific statute with respect to this specific property because the Army Corps of Engineers has already entered comprehensive orders. Right, but we're not talking about unconstitutionality. Clearly, if you were asking for a statute to be declared unconstitutional, you'd have to notify the AG. But I think the rule is fairly broad and is written that any time you're seeking preemption of a state law, it doesn't single out conflict based on the facts here, just as preemption. If you're claiming preemption, you're supposed to notify the Attorney General. I'll be quite candid with you. I had not looked at that issue before today. We looked at it at the time we filed this, and we concluded that we did not do. If that's a matter of concern, I can go back, and if you would like us to file a supplemental brief or a letter brief, we're happy to do it and explain our rationale. I'll be honest with you, that was two years ago, and I don't recall specifically what the language was that we looked at. Okay. Continue with your argument, please. I do believe that this is a conflict preemption case, and the reason is simple. It would be impossible for the parties in this case to comply with the Army Corps of Engineers' orders with respect to this property and also comply with the relief or claims sought by ALGIS. We need to be, I think, very clear on the sequence of events with this property. In 2004, a wetland was identified as a protected wetland, and that wetland straddles the Strahm property and the ALGIS property. That was in 2004. No one disputes that. In October 2009, ALGIS began taking steps to drain its half of the wetland. They installed drain tile, which led up to the property boundary, and then at the property boundary was a submerged weir, which they ripped out and then dug a trench across the Strahm property connected to the ponds. What about, weren't there other tiles on this property prior to this time, prior drainage tiles? Their claim was that there were drainage tiles that existed that had become clogged over time. That's a disputed fact. What is undisputed is that they put in new drain tile in October 2009 to drain their half of the property, or drain their half of the wetland, and then ripped out the weir. That's what everybody agrees on. I'm trying to stick to the stipulated facts here, the uncontested facts here, so that the ALGIS half of the wetland could drain across the Strahm property. Now, let's be very clear what they were doing. They were trying to drain a federally protected wetland. Three months later, the Army Corps of Engineers came in and said, you can't do that, and they issued orders to both ALGIS and Strahm, and the order that they issued to ALGIS is instructive. They said, you have to remove the tile you just put in, and you have to replace the weir in the condition it was in before you ripped it out. In other words, we are undoing your attempt to drain this federally protected wetland. On the Strahm half, they were upset with the Strahms because the Strahms had put in ponds without going through the permitting process. The Strahms remedied that with the Army Corps of Engineers and reached an agreement. They came up with a plan, which is in the record, I believe page 75 of the supplemental appendix. It was approved by the Army Corps of Engineers. And so the Army Corps of Engineers told the Strahms precisely what they needed to do, which is to maintain the ponds at 975 feet above elevation, which is a foot below the elevation at the property line. So because it's a foot below, it wouldn't impede any water coming out of the ALGIS property, and take certain other measures to provide compensatory space. Doesn't the ALGIS complaint say that the Strahms activity clogged their drain tiles, which led them to try and unclog their drain tiles? Now, I understand that they put in slit, slotted porous drain tiles, which the Army Corps said were no good. They had to put in the non-porous drain tiles back the way they were. But my question is, if you have drain tiles in before all this happens, before the ponds are built, before everything is changed, and then the Strahms change the ponds, this clogs their drain tiles, why don't they get damages to unclog their drain tiles? Well, first of all, let's be clear about what the Army Corps said. This is on page 24 of the supplemental record. It told them they had to remove the drain tile from the wetland and restore the channel. There was no discussion of the right or wrong type of tile, what they needed to do. They told them to remove it. So the Army Corps of Engineers has said they're not entitled to drain it. Their damages claim is predicated on the notion that they have a right under Illinois state law to drain that wetland. That's their underlying cause of damages, which is, hey, we have a right under Illinois law to drain the wetland. You impeded that by your actions. The Army Corps of Engineers has stepped in and said you don't have a right to drain that wetland. Now, if it wasn't a federally protected wetland, if this was some other area of their properties, they may be able to prevail on a claim. They might be able to say, you know, we're allowed to drain water across your property under Illinois common law. But because this specific parcel is protected under federal law, the Army Corps of Engineers has the final say here. And they cannot obtain damages by saying we have a right to do under state law what the Army Corps of Engineers has already said they don't have a right to do under federal law. Okay. You said that the wetlands was identified when? 2004. 2004. And counsel just argued that from about 2004, there were water problems. Is there any allegation that these water problems caused that wetland? Well, his argument is actually a little different than that, and it's interesting. His argument is that beginning in 2007, there were problems. They're trying to create an issue of material fact by alleging that the construction of the pond or the expansion of the pond in 2007 created a problem on their side of the property. They're trying to create that issue of fact. The problem with that is it was identified as a wetland in 2004, three years before the pond was expanded. The parties must have gotten involved to get that identification, correct? No, it was done. Or is that independent of parties? You know, I do not believe there was active involvement of the parties. I believe it was part of a comprehensive survey throughout King County, and it was done by a laundry list of federal and state agencies. But there's an interesting tension in the argument that Mr. Smith presented, and I think you picked up on it. One of his complaints about the Stroms' expansion of the ponds in 2007 was that they didn't go to the Army Corps of Engineers to get a permit. Okay, why would they argue that we needed to go to the Army Corps of Engineers to get a permit? The answer is because they knew that that's who has jurisdiction over this specific wetland. They knew that. The Army Corps of Engineers has already taken issue with the Stroms and said you shouldn't have done it without a permit, and that's been remedied through an order and a permit telling the Stroms what they need to do. A couple more points on that issue. Number one— What if the Stroms putting in these ponds increased their wetland and took an acre or a couple acres of property away from their farming ability? I mean, then there's nothing to be done there simply because it's a wetland? I think that's exactly right. So any time you have a wetland, you can do to your neighbor upstream whatever you want to do, as long as you know that somewhere in there there's a wetland. No, I wouldn't go quite that far. But what I'd say is this. The Army Corps of Engineers is the body that gets to decide what you do and don't do to maintain a wetland. They're the ones who make that decision. And like almost everything else under the Clean Water Act, this is an iterative process that includes everybody. And in this particular situation, both the Stroms and ALGIS had their own consultants. The consultants worked with the Army Corps of Engineers. They made recommendations. Ultimately, when the Army Corps of Engineers says this is what needs to be done to preserve the wetland, that's what the parties have to follow. Now, if as part of that process they want to raise to the Army Corps of Engineers, hey, if you take these remedial steps or you require this action, we think this might back up water an extra 200 feet or 50 feet or 1,000 feet or whatever, that's something that needs to be part of that Army Corps of Engineers process. But in this particular case, if you look at the claims that they brought, their claims are that the Stroms, by maintaining ponds that are now permitted by the Army Corps of Engineers, have created drainage issues on their property. That's the underlying issue behind all four of their claims. And the Army Corps of Engineers has said, well, they need to create those drainage issues because that is what is required to maintain the wetland. They have a claim for injunctive relief. In two of their accounts, their only claim is for injunctive relief. And the injunction that is sought is to undo basically everything that the Army Corps of Engineers has ordered done. In two of their claims, they have a claim for money damages. And the claim there is we had a right to drain the wetland. You impeded it. We put in tile, and we spent money putting in that tile, and you need to pay to have it removed. Well, the Army Corps of Engineers has already said they shouldn't have put in that tile. They were wrong to do it. They didn't get a permit. They didn't get approval. And so they had to rip it out. It would undercut the Army Corps of Engineers' order to now say, well, they have some common law right to make us pay for that. Was there tile there before them? There is a dispute on that. So it's a disputed question of fact. The preexistence of the tile is a disputed issue of fact. Whether the tile was there, what condition it was in, what type of tile it was, we don't believe that disputed fact precludes the entry of judgment at this point. And the reason is the new tile that was put in was forced to be removed in its entirety, in its entirety. And so that is the order that gives rise to the preemption issue here. So when the order was to restore it back to its original condition, that did not include putting in non-porous tile? I've got the order right in front of me. It's to replace the weir at the recommended location and elevation as well as remove the drain tile from the wetland and restore the tributary channel. That's the order that I've got right in front of me right now, dated 2011. I will also note that when the Army Corps of Engineers opened its investigation in 2009, they issued a letter to both the Stroms and the Alcasas saying we think they're both in violation of the Clean Water Act. An investigation occurred and the final orders were issued in 2011. I note that Mr. Smith, several times before you referenced the earlier orders, had said, well, in the 2009 orders, this is what the Army Corps of Engineers said. It bears note that that was the opening letter. The final orders, which are at pages 24 through 26 of the supplemental appendix, tell the parties what they need to do. Is it possible that everybody could be in compliance with the Clean Water Act if, in fact, a pond was filled in? Now, granted, it would be different than this order. This order says keep the pond. Basically, it's an after-the-fact approval of the ponds after they were done, without approval, whether they need it or not. I don't know. But an after-the-fact approval of the ponds. But what if some of their injunctive relief was granted? Let's say the swamp pond was filled in. Would that automatically make them not in compliance with the Clean Water Act? Yes, because they have to comply with the permit they've gotten from the Army Corps of Engineers. And that's why there is preemption. You cannot have conflicting obligations. I guess what I'm getting at, though, is it preemption with the law or preemption with an order from the Army Corps? You know what I'm saying? I mean, I don't know that there's Army Corps of Engineers preemption. I've never heard of that before. There's federal law preemption. And the Army Corps has entered orders to make this place in compliance with the Clean Water Act. But could it not otherwise be in compliance with the Clean Water Act if somebody else took some other measures? And I think you're getting into the international paper case a little bit. So the answer on that is the Supreme Court's addressed that issue because, obviously, Congress has the statute. The EPA, the Army Corps of Engineers, they promulgate their regulations. And then they take individual actions in various things, in various instances, as they've done here. And what the Supreme Court has said is that preemption not only occurs where the law is involved, but also where state law threatens the methods by which a law is enforced. So, for example, in this particular instance, the Army Corps of Engineers, within the scope of its jurisdiction, has entered orders telling everyone what they need to do. That has a preemptive effect on state law, and that was made pretty clear in the international paper case, which I think I'm out of time, but I would love to address. If you could just expand on that. Sure. We agree with counsel that international paper, and I believe it's versus Ouellette, is the critical case to look at here. Because in that case, the Supreme Court in 1987 really struggled with the question of, okay, to what extent can you have state laws that coexist alongside the Clean Water Act? And in that particular instance, the Supreme Court did two things. Number one, it made it very clear, and in particular it made it very clear at pages 813, 814, and 815, footnote 20 of its decision, that a state law cannot present an obstacle to the enforcement of the Clean Water Act. So a conflicting state law or a conflicting state enforcement action that would undercut the Clean Water Act is absolutely preemptive. Absolutely preemptive. And that's where the language that I just quoted to your honor comes from. A state law also is preemptive if it interferes with the methods by which the federal statute was designed to reach this goal. It then went on to note that there are some instances, and mostly under the Clean Water Act this relates to point discharges, but it noted that there are some instances where a state law can enhance the goals of the Clean Water Act. And in that international paper case, it involved Lake Champlain, there was a point discharge that was on the New York half of the lake, and people from Vermont were filing a lawsuit under Vermont common law. And what the Supreme Court said is, it is possible that New York law could be more stringent than the Clean Water Act. They might have higher standards for pollution control than we have. And in that case, New York law may enhance, may be more stringent than the goals of the Clean Water Act. And there is language in the Clean Water Act that says, where the state law is more stringent, you have to comply with both the federal and the state law. That's not this case. We don't have an instance where we are dealing with the Illinois Pollution Control Act, and the Illinois Pollution Control Act has a more stringent standard than that which is used by the Clean Water Act or the Army Corps of Engineers. The Army Corps isn't saying you can release 500 parts per billion in Illinois losses, you can only release 250. This is a completely different statute. This is the Drainage Act. It serves a different purpose. And what they're suggesting isn't more stringent or less stringent. It's just different. You can't say that when the Army Corps of Engineers says you have to maintain the wetland and the ponds, that it somehow enhances the goals of the Clean Water Act to have a state court action that says, no, no, no, you've got to remove the ponds and drain the wetland. So that's the real difference. But it bears mention that in wet, there were two points. Well, let me just ask you this. You seem to be treading onto the U.S. Steel grounds now where the two government bodies are addressing two different problems. And that would then not be preemption. If two government bodies were addressing two different problems, you'd just basically argue that this Illinois Drainage Code and the Clean Water Act are addressing two totally different issues, unlike wet. I think that they are serving two entirely different issues. But I'm also, I don't think that the international steel case is applicable. And it's for this reason I do think the preemption analysis in international paper is applicable. And the reason is you can have different state laws that serve different purposes. And a number of the cases that we cited to warm out of the Clean Water Act under different acts, courts found that the federal act and the state act serve different purposes and could coexist. In this particular instance, the application of the Drainage Act can't coexist with the Army Corps of Engineers orders. The specific claims alleged can't coexist with the Army Corps of Engineers orders. And that's the drainage law is perfectly valid when applied to lots of other pieces of property under lots of other circumstances. But not yet. No. All right, thank you, counsel. Your time is up. Mr. Smith, do you have a little argument? Thank you, Your Honor. I found Mr. Elliott's argument particularly interesting. And I would like to specifically address many things, but I will start with this one. The purpose of what August did was to drain the wetlands. Not true. August went in in order to replace existing tile. You were correct, Your Honor. And when they did, they did so with perforated instead of solid. And what the Army Corps required them to do, and it has been done, was to remove the perforated and put in the solid. They were not trying to drain the wetlands. He read an order that said remove the drain tile, which leads everybody, you know, just the casual listener to believe that that means remove the perforated and don't put anything back in. There isn't a single order with regard to this. There are a series of documents, including engineering drawings. I've seen those engineering drawings. I know what's been paid for out there and what's been done. And August went back with the approval of the Army Corps of Engineers, installed covered drain tile, and put it right back where it had been before. And that's what's been done. In your complaint for damages, you're not, are you seeking damages for the installation of perforated and then removal of perforated? No. Or simply the unclogging of your drain tiles? For the unclogging and repair of the damaged drain tile. The perforated or the original? This would be the original, the enclosed. The first set of tile? Yes. And when was that put in? And actually, that was probably put in last fall and this spring. No, no, the original tiles. The original tile. We don't have an exact date, but it goes back to the early 1900s. It was installed by one of the early owners of the land as a family matter. The tradition in the early 1900s was, yes, go out, install the tile where you have wetland, a wet land so that you can use it. We didn't have the Clean Water Act until 1974. And so they would go out as a family, they would dig the trench, they would install the tile, and they would then go forward. And that's where all of this tile comes from, and it's been there for decades. When the perforated tile was installed, was the same trench that the silted, now silt-clog tile, was that removed and it was put there, or was it next to it? No, it was in the same trench. On top of it? Yes. On top of it? No, it had to be taken out and removed and then laid down. When you remove the perforated tile and put in the new tile this spring, as you said, again, same trench? Same trench. There is an exception in the regulations that the Army Corps of Engineers deals with, with regard to drain tiles and wetlands. And that is where there is an existing drain tile for agricultural purposes. But they don't cite that in any of their orders. Well, they don't. I did, however, cite it in my response to their initial order. But they still did not acknowledge that that was a, I don't want to say reasonable, but that was a necessary consideration, correct? That's correct, they did not. Because in the interim, they had designated something new, not just a wetland, but a wetland. And it was an expanded wetland. Again, you were correct. What had happened here was the backup from 2004 through 2009 caused that wetland that had existed and been there as relatively small to expand. And there was about an acre or more of land that was lost with regard to that. Did your client complain to the Army Corps about that? In fact, it was John DeRate's complaint to the Army Corps that initiated both of these actions by the Army Corps. But now we have this order by the Army Corps that you say is causing further problems or potential problems. Has there been any type of administrative action on that? Order that is, you know, August has complied fully with the Army Corps' order. They removed the perforated drain tile. They put in the- I'm not talking about August's compliance. I'm talking about the Strahm's compliance because that's what's really potentially causing the problems, you know, with the backup of water. To my knowledge and to what the engineers who have been on the property say, the Strahm's have not complied at all with regard to- Well, my question is, counsel made an argument that, you know, your avenue was to go to the Army Corps when they entered these final orders and said, this isn't going to help us. This is still going to hurt us. The Army Corps does not allow anybody except the Corps and the respondent to participate. There was an attempt made to do so by Mr. DeRate and Attorney Damish, and the Corps said, no, you cannot participate. You will not participate. And Strahm's didn't participate in what August did. August did not participate in what the Strahm's did. We received no notices. We had no opportunity to have any input or do anything else. But if the Strahm's didn't build this pond that seems to be an issue here until 2007, why are you talking about water from 2004 on? Where did the rest of that come from? There are a series of photos- There were ponds there already? There was initially one. Okay. There are a series of photos that have been taken on an annual or semi-annual basis that show this area and show that in this particular year there was one pond, in this particular year it was expanded, and all of this is part of the proof in this case. And it shows that progression. And it also shows an expansion of the area that was too wet to farm on the August property. This expansion of the pond, is it pond size or new ponds? It's both the size of the first pond, the original pond that was there, and then a second pond that was put in. And you're saying that the second pond is the primary problem or just the natural expansion could also be a problem? I don't have an opinion from an engineering expert, a hydrologist, but I suspect that it was the second pond and the installation of that close to the border with the August property that really caused the problem. You know, we've talked a good deal here in this reply about the facts, and one of the things that was said repeatedly by Mr. Elliott was disputed facts and creating issues. You know, where you have a 2619 order and where you have a jury trial demand, any of these issues, if they exist, are supposed to be resolved by the jury, the trier of fact, and not by the judge on affidavits. Well, the injunctive relief that you're requesting, is everything that you're asking for in the relief for injunctive relief, the relief requested for injunctive relief, is that covered in the Army Corps order? No. What is not covered in the Army Corps order? The Army Corps order really sort of has two parts. One deals with the ponds themselves and the elevation of the ponds. Another portion of it deals with remediation. You know, when you're in a flowage, basically, and you create a pond, you have to provide additional land in order to aid in the flow and the drainage. And you have to make accommodations within your property, because one of the things that happens when you create a pond is you berm up the sides. You remove dirt from one area, you put it into another, and you also remove dirt from the area in order to create these berms, and you really change the topography and the flow of the water. You've asked for removal of the ponds, that's covered in the order. You've asked for removal of the weir, that's in the order. You've asked for removal of the standpipes, that's in the order. What have you asked for in your prayer for injunctive relief that is not covered by the Army Corps order? I mean, very specifically, what in your prayer are you asking for that's not covered by that order? The additional remediation. Which you say should be determined by finder of fact. Yes, Your Honor. And really, all of these things from whether August was intending to drain the wetlands on down should be something that is resolved by the trier of fact and not by the judge on affidavits. I'd like to thank all the attorneys for their arguments today. The case will be taken under advisement with the decision rendered in due course. We'll take a short recess. Thank you very much for your time, Justices.